UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MARY THERESA ARCUDI,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BUILDER SERVICES GROUP, INC.,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)　Civil No. 4:21-cv-10777-MRG<br>)<br>)<br>)<br>)<br>) |

**<u>ORDER DISMISSING CASE FOR LACK OF JURISDICTION</u>**

GUZMAN, J.

In this action, Plaintiff alleges that Defendant's employee-driver, driving a company vehicle, rear-ended her vehicle, causing permanent neck injuries. In his expert report, Plaintiff's medical expert, Dr. Nikhil Thakur opined that "[Plaintiff] would benefit from an evaluation with an orthopedic or neuro spine surgeon to consider a C4-7 ACDF."[1] (ECF No. 78-2 at 6.) Plaintiff's damages expert, James R. Quinn, based his estimations of future care expenses for evaluation and surgical intervention on the statements of Dr. Thakur regarding the prospect of ACDF surgery. (ECF No. 78-1.) In its motions in limine, Defendant moves to preclude testimony or evidence from both of Plaintiff's experts, arguing that Dr. Thakur's statement regarding future surgery referenced above is unreliable, speculative, and irrelevant. Further, since Mr. Quinn's damages estimates are based on Dr. Thakur's evaluation, the same criticisms apply to Mr. Quinn's report

---

[1] ACDF is an abbreviation for "anterior cervical discectomy and fusion" procedure. An ACDF procedure is performed to treat a damaged disc in the neck area of the spine. *Anterior Cervical Discectomy and Fusion (ACDF) Surgery*, JOHNS HOPKINS MED., https://www.hopkinsmedicine .org/neurology_neurosurgery/news/videos/bydon-acdf-video.html (last visited May 15, 2023).

and warrant preclusion.  (ECF No. 75; ECF No. 78 at 2.)  Defendant focuses particularly on the speculative nature of Dr. Thakur's surgical recommendation, noting Dr. Thakur has not definitively recommended surgery, but rather stated Plaintiff "would benefit" from "an evaluation" where a surgeon could "consider" surgical treatment for Plaintiff.  (ECF No. 78 at 3.)  Plaintiff claims $13,508.25 in current medical expenses.  (ECF No. 57 at 4.)  Additionally, Mr. Quinn has calculated the cost of Plaintiff's future medical needs as $15,654 (without surgery) and $101,522 (with surgery).  (ECF No. 57 at 3.)

This Court has diversity jurisdiction over this matter under 42 U.S.C. § 1332 as the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.  However, Plaintiff only satisfies the amount in controversy requirement through her claim for future surgery as established by her expert reports.  Without future surgical interventions, Plaintiff's claimed damages total $29,162.25, the sum of her current medical expenses and future medical needs without surgery.  That amount is well under the statutory requirement for diversity jurisdiction.  Should the Court deem Dr. Thakur's recommendation for future surgery (whether by testimony or in his expert report) inadmissible, Mr. Quinn's inclusion of estimates for evaluation with a surgeon, surgical intervention, and post-op therapy would also be stricken.  The Court must consider whether, to a legal certainty, Plaintiff's claim without any evidence of future surgical treatment actually satisfies the statutory jurisdictional amount.  See Esquilín-Mendoza v. Don King Prods., Inc., 638 F.3d 1, 4 (1st Cir. 2011).  For the reasons stated below, the Court finds Plaintiff's claim does not meet the statutory requirement for amount in controversy to remain in federal court, and the case must be dismissed.

I.  Plaintiff's Expert Reports

   a.  Medical Expert Report by Dr. Nikhil Thakur, MD

Plaintiff reports that she began experiencing neck pain following the October 1, 2018 accident at issue in this case. (ECF No. 78-2 at 1.) Plaintiff had no evaluations of her neck prior to the accident. (Id.) Plaintiff did not have an MRI immediately after her car accident in 2018, and her only MRI was from 2021. (Id. at 5.) Dr. Thakur states, "the only documentation of her preexisting degeneration in her neck is the x-ray obtained the day after the car accident," which he states showed degeneration at her C5-6 vertebrae. (Id.) It does not appear from the expert report that Dr. Thakur himself ordered an MRI for his evaluation of Plaintiff in February 2022.

Dr. Thakur diagnosed Plaintiff with chronic neck pain, cervicogenic headaches, and cervical myelopathy. (Id.) Dr. Thakur concludes that the chronology of the accident and injury — that the changes in her neck on the MRI "appear to have occurred after the car accident" — "indicat[es] the car accident [was] an inciting event . . . ." (Id.) Despite Plaintiff receiving treatment and evaluations for her neck since 2018, she was never diagnosed with cervical myelopathy prior to Dr. Thakur's evaluation. (See id.) Regarding her myelopathic symptoms, Dr. Thakur notes "there is no documentation of any physical exam findings or history that her providers asked her regarding this specific issue." (Id.) Additionally, Dr. Thakur notes that Plaintiff reported experiencing "balance issues prior to the car accident," which Dr. Thakur writes, "would be explained from some of the pre-existing degeneration at C5-6 with cord effacement at that level." (Id.) However, based on the 2021 MRI, Dr. Thakur concludes "the cord has impingement primarily at C4-5 which, to a reasonable degree of medical certainty, is new [and] the car accident incited new cord compression at the C4-5 level and aggravated her degeneration at the C5-6 level resulting in consist [sic] myelopathic symptoms at this time." (Id.)

3

Relying on his diagnosis of cervical myelopathy, Dr. Thakur opined that Plaintiff "would benefit from an evaluation with an orthopedic or neuro spine surgeon to consider a C4-7 ACDF," adding, "[a]ll opinions regarding future care are held to a reasonable degree of medical probability." (Id. at 6.) Finally, with respect to permanency, Dr. Thakur states, "[a]t this point [Plaintiff] has reached maximum medical improvement." (Id.)

b. Damages Expert Report by James R. Quinn, RN, BSN, LCP-C, CLCP, CPB

In his Medical Cost Projection, Plaintiff's damages expert, James R. Quinn, relies extensively on Dr. Thakur's report and diagnosis to calculate Plaintiff's future care expenses. (ECF No. 78-1.) Mr. Quinn estimates Plaintiff's lifetime costs of care in three categories: (1) evaluation with an orthopedic or neuro spine surgeon; (2) surgical intervention, and; (3) therapy (including acupuncture, massage, and post-op physical therapy). (Id. at 5.) As stated above, Mr. Quinn calculated the cost of Plaintiff's future medical needs as $15,654 (without surgery) and $101,522 (with surgery). (ECF No. 57 at 3.)

II.  LEGAL STANDARDS

Federal courts are courts of limited jurisdiction, and, as such, the Court has "a responsibility to police the border of federal jurisdiction." Spielman v. Genzyme Corp., 251 F.3d 1, 4 (1st Cir. 2001). "Even where 'no party has questioned whether the district court had jurisdiction to rule in [a] case, it is well established that [we] have a duty to ensure that [federal district courts] are not called upon to adjudicate cases which in fact fall outside the jurisdiction conferred by Congress.'" CE Design, Ltd. v. Am. Econ. Ins. Co., 755 F.3d 39, 43 (1st Cir. 2014) (quoting Esquilín-Mendoza, 638 F.3d at 3).

When an action is brought in federal court pursuant to diversity jurisdiction, jurisdiction is proper only where "the matter in controversy exceeds the sum or value of $75,000, exclusive of

interest and costs." 28 U.S.C. § 1332. The burden is on the plaintiff to "establish that the minimum amount in controversy has been met." CE Design, Ltd., 755 F.3d at 43 (quoting Abdel-Aleem v. OPK Biotech LLC, 665 F.3d 38, 41 (1st Cir. 2012)). A plaintiff's "good faith allegation of damages meeting the required amount in controversy is usually enough." Id. However, the First Circuit has held "'legal certainty that the claim is really for less than the jurisdictional amount,' [ ] trumps the plaintiff's good faith in claiming for a larger amount." Esquilín-Mendoza, 638 F.3d at 4 (citations omitted) (discussing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938). In other words, "jurisdiction is defeated notwithstanding the plaintiff's good faith in claiming for the jurisdictional amount if one familiar with the applicable law could not reasonably have concluded that the claim was worth the jurisdictional amount." Esquilín-Mendoza, 638 F.3d at 4 (citations omitted). "Where it appears 'to a legal certainty that the claim is really for less than the jurisdictional amount,' dismissal is required." Id. (quoting St. Paul Mercury Indem. Co., 303 U.S. at 289).

Plaintiff in this case employs expert testimony to establish the amount in controversy, specifically, her claims for current and future medical expenses and corresponding damages claims. The trial court has "broad discretion in determining issues of admissibility of expert testimony and scientific evidence." Baker v. Dalkon Shield Claimants Tr., 156 F.3d 248, 251 (1st Cir. 1998) (citing United States v. Shay, 57 F.3d 126, 132 (1st Cir. 1995)). Federal Rule of Evidence 702 governs the admissibility of expert testimony. FED. R. EVID. 702. The adoption of Rule 702 in its present form codified the standard of admissibility for expert testimony that was set forth in Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993). Earley Info. Sci., Inc. v. Omega Eng'g, Inc., 575 F. Supp. 3d 242, 244 (D. Mass. 2021). Under Rule 702, district courts considering the admissibility of expert testimony must "act as gatekeepers, ensuring that an

5

expert's proffered testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" Samaan v. St. Joseph Hosp., 670 F.3d 21, 31 (1st Cir. 2012) (quoting Daubert, 509 U.S. at 597).  Under the court's gatekeeping function, it must consider three sets of issues: (1) whether the proposed expert is qualified by "knowledge, skill, experience, training or education"; (2) whether the subject matter of the proposed testimony properly concerns "scientific, technical, or other specialized knowledge"; and (3) "whether the testimony [will be] helpful to the trier of fact, *i.e.*, whether it rests on a reliable foundation and is relevant to the facts of the case." Bogosian v. Mercedes-Benz of N. Am., Inc., 104 F.3d 472, 476 (1st Cir. 1996) (quoting F̲ED. R. E̲VID. 702) (internal quotation marks omitted).

Expert testimony that is admissible under Rule 702 may nonetheless be excluded under Rule 403 "if its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." F̲ED. R. E̲VID. 403; Earley, 575 F. Supp. 3d at 245 (citing Daubert, 509 U.S. at 595).  Thus, "expert testimony that is relevant and that passes muster from a scientific or technical standpoint may nonetheless be excluded if it is likely to be misinterpreted or misused by the jury." Earley, 575 F. Supp. 3d at 245.

III.    DISCUSSION

In this case, the Court's primary concern with the testimony of both of Plaintiff's experts relates to the indefinite nature of Dr. Thakur's recommendation for future surgical evaluation.  The Court does not challenge either Dr. Thakur's or Mr. Quinn's qualifications or whether the subject matter of their proposed testimony concerns "scientific, technical, or other specialized knowledge." See Bogosian, 104 F.3d at 476 (quoting F̲ED. R. E̲VID. 702).  Dr. Thakur is a board-certified orthopedic spine surgeon, (ECF No. 89 at 1), and Mr. Quinn is a registered nurse and

certified Life Care Planner, (ECF No. 91 at 1). Both experts' testimony indisputably concerns specialized knowledge relating to medical prognosis and damages calculations. Additionally, whether Plaintiff will require future surgery and the costs Plaintiff will bear for such treatment could be helpful to the trier of fact and is relevant to the facts of the case in determining injury and damages. See Bogosian, 104 F.3d at 476 (quoting FED. R. EVID. 702). Therefore, the Court does not preclude Plaintiff's experts' testimony based on Rule 702 or under a Daubert analysis. But, expert evidence is still subject to review under Rule 403, and "expert testimony that is relevant and that passes muster from a scientific or technical standpoint may nonetheless be excluded if it is likely to be misinterpreted or misused by the jury." Earley, 575 F. Supp. 3d at 245.

In this case, despite asserting that "[a]ll opinions regarding future care are held to a reasonable degree of medical probability," Dr. Thakur's statement regarding future surgical intervention amounts to speculation and conjecture rather than a definitive recommendation for treatment. Dr. Thakur's own words illustrate the precatory nature of his recommendation: "[f]rom the standpoint of her neck pain and myelopathic symptoms, she *would benefit* from *an evaluation* with an orthopedic or neuro spine surgeon *to consider* a C4-7 ACDF." (ECF No. 78-2 at 6 (emphasis added).) Even Plaintiff's own opposition to Defendant's motion in limine states that Dr. Thakur is himself a "board-certified orthopedic spine surgeon." (ECF No. 89 at 1.) Why Dr. Thakur would be unable to evaluate Plaintiff himself, or why Plaintiff failed to pursue a more definitive evaluation with another spine surgeon is beyond the Court's reason. As it stands, Dr. Thakur did not recommend surgical intervention as future care. He merely opines that it would be to Plaintiff's benefit if she were to visit a surgeon who would then evaluate her, and the surgeon would then consider whether they recommend Plaintiff receive ACDF surgery.

Under Massachusetts law, with respect to future damages, "[a] plaintiff is entitled to compensation for all damages that reasonably are to be expected to follow, but not to those that *possibly* may follow, the injury which he has suffered." Donovan v. Philip Morris USA, Inc., 914 N.E.2d 891, 899 (Mass. 2009) (emphasis added) (citing Pullen v. Bos. Elevated Ry., 94 N.E. 469, 469 (Mass. 1911)); Anderson v. W.R. Grace & Co., 628 F. Supp. 1219, 1230-31 (D. Mass. 1986). A plaintiff must show future damages by a preponderance of the evidence. Donovan, 914 N.E.2d at 899. Thus, Plaintiff may only recover for the costs of future surgery if she shows by a preponderance of the evidence that she will reasonably require the procedure in the future.

Dr. Thakur's status as a board-certified spine surgeon and Plaintiff's designated medical expert lend weight to any recommendation he may make. To allow admission of evidence or testimony based on Dr. Thakur's precatory statements regarding Plaintiff's future surgical needs raises a risk of misleading the jury that future surgical treatment is "reasonably expected to follow," when, in actuality, Dr. Thakur's statements merely indicate surgery is no more than possible. Id. at 899. Because Dr. Thakur's statements regarding future surgery are likely to be misinterpreted or misused by the jury, the Court precludes its admission whether by testimony or physical evidence.

Regarding Plaintiff's evidence of damages, Mr. Quinn has calculated the cost of Plaintiff's future medical needs as $15,654 (without surgery) and $101,522 (with surgery). (ECF No. 57 at 3.) His calculation for surgical expenses includes an evaluation with an orthopedic or neuro spine surgeon, the surgical intervention itself, and post-operation physical therapy. (ECF No. 78-1 at 5.) As Mr. Quinn's damages projections for future surgery are based entirely on Dr. Thakur's statements regarding the ACDF procedure, Mr. Quinn is precluded from testifying or submitting evidence of damage estimates relating to future surgical intervention.

Without the expert evidence of future surgical intervention, Plaintiff has no other evidence that would establish that the amount in controversy in this case exceeds $29,152.25, the sum of her current medical expenses and future medical needs without surgery. (ECF No. 57 at 3-4.) While Plaintiff may have in good faith made her allegation that the damages in this case meet the amount in controversy requirement for diversity jurisdiction under 28 U.S.C. § 1332, the Court finds to a legal certainty that her claim is really for less than the jurisdictional requirement. See Esquilín-Mendoza, 638 F.3d at 4. As such a finding "trumps the plaintiff's good faith in claiming for a larger amount," the Court does not have jurisdiction over this matter and the case must be dismissed. Id.

IV.     CONCLUSION

For the reasons stated above, Plaintiff's case is DISMISSED for lack of jurisdiction.


SO ORDERED.

Dated: May 16, 2023

    /s/ Margaret R. Guzman
Margaret R. Guzman
United States District Judge